UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of SUSTAINABLE MODULAR MANAGEMENT, INC.,<br><br>          Plaintiff,<br><br>  vs.<br><br>JE DUNN CONSTRUCTION COMPANY, *et al.*,<br><br>          Defendants. | Case No.: 2:20-cv-00790-GMN-NJK<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 106), filed by Plaintiff United States of America for the use and benefit of Sustainable Modular Management, Inc. ("SMM"). JE Dunn Construction Company ("JE Dunn") filed a Response, (ECF No. 116), to which SMM filed a Reply, (ECF No. 122).

For the reasons discussed below, the Court GRANTS SMM's Motion for Partial Summary Judgment.

**I.**     **BACKGROUND**

This dispute arises out of SMM's alleged abandonment and repudiation of its subcontract with JE Dunn, which required SMM to design and construct a temporary phasing facility ("TPF") during the renovation of a hospital at Nellis Air Force Base ("Nellis AFB"). SMM's Motion for Partial Summary Judgment contends it is entitled to summary judgment on the "narrow but large issue of JE Dunn's damage[s]" attributable "to the cost of adding a second [TPF]," a cost SMM argues was "never contemplated, considered, or intended" when the parties entered the Subcontract. (SMM Partial Mot. Summ. J. ("MSJ") 2:10–13, ECF No. 106). The specific facts underlying JE Dunn's inclusion and implementation of the second TPF

are outlined below.

### A. The Prime Contract

JE Dunn entered into a contract (the "Prime Contract") with the United States Army Corps of Engineers (the "Government") to design and construct renovations to the Mike O'Callaghan Federal Medical Center at Nellis AFB. (Prime Contract, Ex. 1 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ, ECF No. 104-2). The Prime Contract required JE Dunn to construct TPFs to house hospital departments during the renovation of hospital. (*Id.* at 4). JE Dunn was obligated to "perform the work required . . . in strict accordance with the terms of [the] solicitation . . . ." (*Id.* at 3).

JE Dunn planned to perform the hospital renovations in two phases. First, the emergency department, trauma room, and certain administrative offices would move into the TPF while JE Dunn renovated those departments. (Eli Kaldahl Decl. ¶ 7, Ex. A to Partial MSJ, ECF No. 104-1). Second, after these renovations were completed, those departments would return to the hospital and the remaining departments would move into the TPF while JE Dunn completed the remaining renovations. (*Id.* ¶¶ 8–9). JE Dunn would then dismantle and remove the TPF once the renovations were completed. (*Id.* ¶ 14).

### B. The Subcontract

JE Dunn and SMM entered into a Subcontract under which SMM would design, construct, deliver, and install the TPF at Nellis AFB, reconstruct the TPF in between the two phases of work, and then remove the TPF upon completion of the renovations. (*See generally* Subcontract, Ex. 3 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ, ECF No. 104-4). The agreement incorporated the Prime Contract and included a term specifying that the "[t]ime limits stated in the [a]greement are of the essence." (*Id.* at 7).

The TPF consisted of approximately 20 modular units that SMM agreed to lease to JE Dunn through the Government. (*Id.* at 24). The Subcontract provided, in part, that SMM would

"prove all engineering design and stamped documents required for modular buildings structures," and would renovate the TPF "to meet requirements of Phase 2 TPF based on design developed by [JE Dunn]." (*Id.* at 23).

      Sections 5.7 and 14.1 of the Subcontract pertained to damages recoverable by JE Dunn in the event SMM delayed completion of the project.  These damage-for-delay provisions respectively state, in pertinent part:

> 5.7 Damage for delay shall be assessed against [SMM] only to the extent caused by the [SMM] or any person or entity for whose acts the [SMM] may be liable. To the extent [JE Dunn] is assessed damages for delay or suffers other damages as a result of [SMM's] performance or non-performance of the Work of this Contract, [JE Dunn] shall be entitled to assess [SMM] for [JE Dunn's] damages attributable to [SMM] and reduce the Contract Sum by such amount.
>
> 14.1 . . . In any case, if the unpaid of the amount to be paid under this Contract exceeds the expense incurred by [JE Dunn] to finishing the Work, such excess shall be paid by [JE Dunn] to [SMM], but if such expense shall exceed the unpaid balance, [SMM] shall pay the difference to [JE Dunn].

(*Id.* at 8, 19).  According to SMM, the scope of "Work" in the damage-for-delay provisions is limited by its definition located at Section 1.1.3 of the Subcontract. (Reply 4:24–5:3, ECF No. 122).  Subsection 1.1.3 defines "Work" as the "construction services required by the Contract Documents, whether completed or partially completed, and includes all labor, materials, equipment, services and other items required to fulfill the Contractor's obligations." (Subcontract at 3, Ex. 3 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ).  SMM contends the Subcontract considered that its "Work" was limited to providing one TPF for both phases of the project. (Reply 5:1–3).

      Finally, the Subcontract contained a reciprocal disclaimer of damages codified at Section 12.14.  This Section stated that JE Dunn and SMM waived "claims against each other for their consequential damages arising out of or relating to this Contract, including without limitation, any consequential damages due to either party's termination." (Subcontract at 18, Ex. 3 to Eli

Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ).

### C. Change Order

In May 2019, the Government changed the occupancy requirements for the phase one TPF. (Occupancy Letter at 2–4, Ex. 4 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ, ECF No. 104-5). Specifically, the Government advised JE Dunn it would need the TPF to have what is known as "I-2, an occupancy required needed for certain medical facilities." (JE Dunn Counterclaim ¶ 13, ECF No. 73). JE Dunn communicated to the Government that after discussions with other modular vendors, it was "unable to confirm that this type of occupancy has been achieved in a modular building." (JE Dunn & Government Occupancy Letter at 2, Ex. 12 to SMM Partial MSJ, ECF No. 107-12); (Eli Kaldahl Dep. 58:22–24, Ex. 3 to SMM Partial MSJ, ECF No. 107-2) (expressing that it was his first time working on a TPF that required I-2 compliance).

This new occupancy requirement resulted in a Change Order to the Subcontract in October 2019. (Change Order One, Ex. 15 to SMM Partial MSJ, ECF No. 107-15). This Change Order, among other things, extended the scheduled completion deadline of phase one to January 31, 2020, and increased SMM's payment under the Subcontract from $1,465,718.00 to $2,065,718.00. (*Id.* at 2). According to SMM, it is notable that no date was inserted in the Change Order for when substantial completion of phase one was expected. (SMM Partial MSJ 5:17–18). JE Dunn disputes the significance of this purported omission, and highlights that regardless of when it had to substantially complete phase one, SMM knew that total completion was due by January 31, 2020. (Resp. 6:6–10, ECF No. 116).

### D. JE Dunn Assumes SMM's Work Agreed to Under the Subcontract

As set forth in the Court's Order on JE Dunn and the Surety Defendants' Motion for Partial Summary Judgment, numerous issues with SMM's performance arose after it began work, delaying completion of phase one of the project. (Order JE Dunn's Partial MSJ 3:16–

1   7:25, ECF No. 126).  SMM disputes whether its performance was deficient, and counters that
2   any delay was caused by JE Dunn's obstructionist conduct. (*Id.*).  What is undisputed is that
3   these issues, regardless of who caused them, resulted in phase one not being completed by the
4   January 2020 deadline. (*Id.*).  After this deadline, the parties' disputes culminated in SMM
5   stopping work, and JE Dunn completing the work SMM contracted to perform. (*Id.*).

6         **E.  JE Dunn's Completion of SMM's Work**

7         In late February and early March 2020, JE Dunn began considering whether
8   installation of a second TPF would allow for completion of the project in a timely and cost-
9   effective manner. (Eli Kaldahl Decl. ¶¶ 23–24, Ex. A to JE Dunn Resp., ECF No. 118-1).  In a
10  letter sent to SMM on March 19, 2020, JE Dunn explained that adding a second TPF was the
11  "approach that JE Dunn is taking, subject to approval by the Government of a second TPF on
12  site." (JE Dunn Mar. 19, 2020, Letter at 3, Ex. 19 to Resp., ECF No. 107-19).  The letter further
13  stated that JE Dunn had offered SMM the opportunity to supply the second TPF, but SMM
14  "seemed to reject that option quickly ending [their] conversation." (*Id.*).

15        Ultimately, JE Dunn did not construct the second TPF until after SMM stopped working
16  on the project. (Eli Kaldahl Decl. ¶¶ 42–45, Ex. A to JE Dunn Resp.).  Because of the delay, JE
17  Dunn used two TPFs to complete phases one and two concurrently, rather than in the two
18  distinct phases as considered under the Subcontract. (*Id.*).  Eli Kaldahl, JE Dunn's corporate
19  representative, later acknowledged that at the time SMM and JE Dunn entered into the
20  Subcontract, the parties did not consider that a second TPF would be used in completing the
21  project. (Eli Kaldahl Dep. 150:15–153:21, Ex. 3 to SMM Partial MSJ); (JE Dunn Answer &
22  Counterclaims ¶¶ 8–10, ECF No. 73) (explaining that SMM would provide one TPF for both
23  phases, and that SMM's contract "required it to renovate the vacated TPF" after phase one so
24  that the TPF "could be used by the departments affected by [p]hase [t]wo while the [p]hase
25  [t]who renovations were performed").

JE Dunn spent $12,063.968 to complete SMM's work on the project. (JE Dunn's Resp. SMM's Interrog. at 4–6, Ex. 24 to SMM Partial MSJ, ECF No. 107-24).  SMM notes that the total amount spent by JE Dunn is "remarkable given that the total value of SMM's Subcontract was $2,065,718.00." (SMM Partial MSJ 7:2–5).  After applying certain credits and offsets, JE Dunn seeks damages amounting to $10,792,215.00. (Resp. 7:4–10).  Of this amount, JE Dunn claims $7,610,370.00 is derived from installing the second TPF. (JE Dunn's Resp. SMM's Interrogatories at 4–6, Ex. 24 to SMM Partial MSJ).  JE Dunn's use of the second TPF was motivated in part by its desire to avoid harm to its reputation and relationship with the Government. (Bill Schwartzkopf Dep. 207:17–209:11, Ex. 1 to SMM Partial MSJ, ECF No. 107-1).

### F. Current Litigation

SMM brought this case against JE Dunn and the Surety Defendants under the Miller Act, which requires contractors doing construction contract work for the Government to obtain performance and payment bonds to ensure the work is completed and that all persons supplying labor and material for the project are paid. (*See generally* First Am. Compl, ECF No. 72). SMM further alleged claims for: (1) breach of contract against JE Dunn; (2) breach of contract against the Surety Defendants, (3) conversion against JE Dunn for exercising dominion or control of the modular units, and (4) declaratory judgment against JE Dunn. (*Id.*).  JE Dunn and the Surety Defendants in turn filed counterclaims against SMM for: (1) breach of contract; (2) declaratory judgment; (3) indemnification; and (4) subrogation. (*See generally* JE Dunn Answer & Counterclaims).  By the instant Motion for Partial Summary Judgment, SMM contends it is entitled to partial summary judgment on JE Dunn's breach of contract claim, specifically on the "narrow but large issue of JE Dunn's damage[s]" attributable "to the cost of adding a second [TPF]." (SMM Partial MSJ 2:10–13).

///

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating

that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

1   The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn
2   in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is
3   not significantly probative, summary judgment may be granted. *See id.* at 249–50.
4       Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration
5   that, for specified reasons, it cannot present facts essential to justify its opposition, the court
6   may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or
7   declarations or to take discovery; or (3) issue any other appropriate order."  To obtain relief
8   under Rule 56(d), nonmovants must show "(1) that they have set forth in affidavit form the
9   specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and
10  (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of*
11  *Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

12  **III.   DISCUSSION**

13      SMM contends it is entitled to summary judgment on JE Dunn's damages attributable to
14  the cost of adding a second TPF under its breach of contract claim because: (1) the damages are
15  consequential and thus barred by the Subcontract's reciprocal disclaimer of consequential
16  damages provision; (2) the construction of a second TPF was an unforeseeable action when the
17  parties entered into the Subcontract; (3) the damages were the result of JE Dunn's failure to
18  mitigate.[1] (SMM Partial MSJ 13:5–9).  The Court first examines whether JE Dunn's damages
19  arising from the use of the second TPF are properly categorized as consequential damages.
20  ///
21  ///

---

[1] SMM acknowledges in its Reply that "the question of mitigation turns on the reasonableness of JE Dunn's decision making while assuming all facts against SMM." (Reply 9:2–9).  Because SMM concedes JE Dunn's mitigation is a question of fact unsuitable for resolution at this stage, the Court's inquiry is limited to its remaining two arguments. *See Lehtonen v. Gateway Cos., Inc.*, No. 2:04-cv-0625, 2007 WL 2914649, at *8 (D. Nev. Sept. 30, 2007) ("[W]hether a party acted reasonably to mitigate its damages is a question of fact for the jury.").

### A. Consequential Damages

Under Nevada law, the general rule in a breach of contract case is that the injured party may be awarded expectancy damages, which are determined by the method set forth in the Restatement (Second) of Contracts § 347 (Am. Law. Inst. 1981). *Rd. & Highway Builders, LLC v. N. Nev. Rebar, Inc.*, 284 P.3d 377, 382 (Nev. 2012). The Restatement (Second) of Contracts § 347 provides, in pertinent part, as follows:

> the injured party has a right to damages based on his expectation interest as measured by (a) the loss in value to him of the other party's performance caused by its failure or deficiency, plus (b) *any other loss, including incidental or consequential loss*, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform.

*Id.* (emphasis added).

SMM asserts that the second TPF constitutes consequential loss or damages as provided for in § 347(b). (*See generally* SMM Partial MSJ). Consequential damages are those that occur as a result of special circumstances, beyond the ordinary course of events, which the party in breach will be aware of at the time of contract formation only if notified of such circumstances. Restatement (Second) of Contracts § 251 (Am. Law. Inst. 1981); *see Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1255 (D. Nev. 2015) ("Consequential losses are those damages that 'arise[e] naturally or were reasonably contemplated by both parties at the time they made the contract.") (quoting *Hornwood v. Smith's Food King No. 1*, 772 P.2d 1284, 1286 (Nev. 1989). Because JE Dunn's damages are barred by the Subcontract if they are deemed consequential, the Court first turns to the plain language of the Subcontract's reciprocal consequential damages waiver.

Per section 12.14 of the Subcontract, JE Dunn and SMM waived "claims against each other for their consequential damages arising out of or relating to this Contract, including without limitation, any consequential damages due to either party's termination." (Subcontract at 18, Ex. 3 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ). This provision is

ambiguous, as it does not define what the parties contemplated would be "consequential damages." The term "consequential damages" is subject to multiple interpretations, and "no two courts or treaties define consequential damages the same way." *See, e.g.*, Lynn R. Axelroth, *Mutual Waiver of Consequential Damages: The Owner's Perspective*, 18 CONSTR. L., 11 (1998) (listing six different interpretations of the term). Thus, cursory language waiving "consequential damages" provides no insight into how the parties intended to characterize and classify this category of damages. Because the Subcontract is ambiguous as to what constitutes consequential damages, the Court looks to the intent of the parties, a factual inquiry. *See Everbank v. Wheeler*, No. 2:09-cv-1080, 2011 WL 1299936, at *3 (D. Nev. Mar. 30, 2011) ("Determining the parties' true intent or the circumstances that may elucidate ambiguous language may require fact finding by the trier of fact.").

      SMM argues that JE Dunn's damages arising from the second TPF should be categorized as consequential damages because the parties never intended a second TPF to be used when they entered the Subcontract. (Reply 2:1–5:12). This argument is well-taken. The Subcontract, in defining SMM's Scope of Work, referred to SMM's construction and renovation of a single TPF for both phases. (Subcontract at 22, Ex. 3 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ). And Kaldahl, JE Dunn's corporate representative, later acknowledged that at the time SMM and JE Dunn entered the Subcontract, the parties did not consider that a second TPF would be used to complete the project. (Eli Kaldahl Dep. 150:15–153:21, Ex. 3 to SMM Partial MSJ); (JE Dunn Answer & Counterclaims ¶¶ 8–10). The Scope of Work delineated in the Subcontract and the testimony of Kaldahl show that it was the intent of the parties to use one TPF for both phases of performance. This lends itself to SMM's position that JE Dunn's use of a second TPF constitutes consequential damages because JE Dunn only contracted to receive one TPF under the terms of the Subcontract, and the parties did not consider utilizing a second TPF to complete performance at the time of contracting. *See*

*Intercon Constr., Inc. v. Team Indus. Servs. Inc.*, No. 18-cv-2081, 2022 WL 16708449, at *13 (N.D. Iowa Nov. 4, 2022) ("Other costs that the plaintiff may not have incurred if the defendant had not breached, but that are not part of what the plaintiff was supposed to get from the defendant, are consequential."). This evidence is sufficient for SMM to demonstrate that JE Dunn's use of the second TPF should be categorized as consequential damages. The burden now shifts to JE Dunn "to designate specific facts, supported by evidence, showing that there is a genuine issue for trial." *Driscoll v. Anaya Law Grp.*, No. 18-cv-02309, 2019 WL 6736894, at *1 (C.D. Cal. Aug. 27, 2019) (citing *Celotex*, 477 U.S. at 324).

JE Dunn argues the Subcontract's delay-for-damages provisions demonstrate that the parties intended for JE Dunn to remediate SMM's delay or abandonment by completing its performance, and that its use of the second TPF is thereby an action contemplated under the agreement. (Resp. 15:1–22:28). Sections 5.7 and 14.1 of the Subcontractor delineate two damages-for-delay provisions. These damage-for-delay provisions provide that damages will be assessed against SMM for delay in performance, and SMM would be liable to JE Dunn for additional expenses incurred by JE Dunn in completing SMM's work. (Subcontract at 8, 19, Ex. 3 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ).

The issue with JE Dunn's position is that sections 5.7 and 14.1 generally consider JE Dunn's remedies if SMM delayed or abandoned in its performance as set forth in its Scope of Work. And SMM's Scope of Work was to provide one TPF. (Subcontract at 22, Ex. 3 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ). Under JE Dunn's interpretation, any action it took to complete the project was reasonably contemplated by the parties at the time of contracting so long as it resulted from SMM's delay or abandonment. That position is untenable. Some actions, even if remedial, were not considered by the parties and do not arise directly from SMM's breach. This is especially true when those actions cost three times the amount of the entire value of the Subcontract. In sum, the Court finds JE Dunn's request for

damages related to the second TPF are consequential because they were not contemplated by the parties, and although they were used to remediate SMM's alleged delay or abandonment, were not contracted for under the Subcontract.

### B. Foreseeability

SMM further argues that regardless of whether JE Dunn's damages are construed as consequential, they are barred because use of the second TPF was not foreseeable. (Reply 7:4–8:21). Foreseeability requires that damages from a breach of contract be fairly and reasonably considered as arising from the breach itself, "or were reasonably contemplated by both parties at the time they made the contract." *Hornwood v. Smith's Food King No. 1*, 772 P.2d 1284, 1286 (Nev. 1989) (quoting *Conner v. S. Nev. Paving, Inc.*, 741 P.2d 800, 801 (Nev. 1987). "Ordinarily, this presents a factual issue to be determined by the trier of fact." *Daniel, Mann, Johnso & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982). "Only if it can be said that the damages are the direct or natural result of the breach can they be presumed foreseeable as a matter of law." *Id.*

For the reasons stated above, JE Dunn's use of the second TPF was not reasonably contemplated by the parties at the time they made the contract. Moreover, JE Dunn's use of the second TPF does not fairly and reasonably arise from the breach itself, as JE Dunn's deviated from what SMM was obligated to provide under the $2 million Subcontract, at a price of at least $7.6 million, far exceeding the total value of the Subcontract. Accordingly, the Court GRANTS SMM summary judgment on this issue.

///
///
///
///
///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that SMM's Motion for Partial Summary Judgment, (ECF No. 106), is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties will have thirty days from the date of this Order to file a jointly proposed pretrial order pursuant to LR 16-3(b) using the form provided in LR 16-4.

**DATED** this __21__ day of March, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT