1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA, for the
use and benefit of SUSTAINABLE
MODULAR MANAGEMENT, INC.,

    Plaintiff/Counter-Defendant,

  vs.

JE DUNN CONSTRUCTION COMPANY, *et
al.*,

    Defendants/Counter-Claimants.

Case No.: 2:20-cv-00790-GMN-NJK

**ORDER GRANTING MOTION FOR
RECONSIDERATION**

   Pending before the Court is the Motion for Reconsideration, (ECF No. 132), filed by JE Dunn Construction Company.  United States of America for the use and benefit of Sustainable Modular Management, Inc. ("SMM") filed a Response, (ECF No. 137), to which JE Dunn filed a Reply, (ECF No. 142).

## I.  BACKGROUND

   This dispute arises out of SMM's alleged abandonment and repudiation of its subcontract with JE Dunn, which required SMM to design and construct a temporary phasing facility ("TPF") during the renovation of a hospital at Nellis Air Force Base ("Nellis AFB"). SMM's Motion for Partial Summary Judgment contends it is entitled to summary judgment on the "narrow but large issue of JE Dunn's damage[s]" attributable "to the cost of adding a second [TPF]," a cost SMM argues was "never contemplated, considered, or intended" when the parties entered the Subcontract. (SMM Partial Mot. Summ. J. ("MSJ") 2:10–13, ECF No. 106).  The Court incorporates the background and procedural of this case from its Order granting SMM's request for partial summary judgment. (Order 2:2–6:24, ECF No. 127).  In short, the Court found that JE Dunn's damages from the second TPF were consequential, rather

1  than direct damages, and as a result, were not recoverable under the Subcontract. (*Id.* 9:12–

2  13:20).  It also found that JE Dunn's second TPF damages were not recoverable because they

3  were not foreseeable. (*Id.*).  JE Dunn now requests the Court reconsider its conclusions. (Mot.

4  Reconsider, ECF No. 132).

5  **II.    LEGAL STANDARD**

6        Although not mentioned in the Federal Rules of Civil Procedure, motions for

7  reconsideration may be brought under Rules 59 and 60.  Rule 59(e) provides that any motion to

8  alter or amend a judgment shall be filed no later than 28 days after entry of the judgment.  The

9  Ninth Circuit has held that a Rule 59(e) motion for reconsideration should not be granted

10  "absent highly unusual circumstances, unless the district court is presented with newly

11  discovered evidence, committed clear error, or if there is an intervening change in the

12  controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873,

13  880 (9th Cir. 2009) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.

14  1999)).

15        Under Rule 60(b), a court may, upon motion and just terms, "relieve a party . . . from a

16  final judgment," on the ground that the "judgment is void[.]" Fed. R. Civ. P. 60(b)(4).  A

17  judgment is "void only if the court that rendered judgment lacked jurisdiction of the subject

18  matter, or of the parties, or if the court acted in a manner inconsistent with due process of law."

19  *In re Ctr. Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985).  Additionally, under Rule

20  60(b), a court may relieve a party from a final judgment, order or proceeding only in the

21  following circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly

22  discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; or

23  (6) any other reason justifying relief from the judgment. *Stewart v. Dupnik*, 243 F.3d 549, 549

24  (9th Cir. 2000).  Rule 60(b) relief should only be granted under "extraordinary circumstances."

25  *Buck v. Davis*, 137 S. Ct. 759, 777 (2017).

1

**III.    DISCUSSION**

2

Here, in an abundance of caution and to minimize the risk of unnecessary future

3

litigation, the Court finds reconsideration is warranted on both of its findings.[1]  The Court

4

begins with its categorization of the second TPF as consequential damages.

5

**A. Consequential Damages**

6

Under Nevada law, the general rule in a breach of contract case is that the injured party

7

may be awarded expectancy damages, which are determined by the method set forth in the

8

Restatement (Second) of Contracts § 347 (Am. Law. Inst. 1981). *Rd. & Highway Builders, LLC*

9

*v. N. Nev. Rebar, Inc.*, 284 P.3d 377, 382 (Nev. 2012).  The Restatement (Second) of Contracts

10

§ 347 provides, in pertinent part, as follows:

11

> the injured party has a right to damages based on his expectation interest as
> measured by (a) the loss in value to him of the other party's performance caused
> by its failure or deficiency, plus (b) *any other loss, including incidental or*
> *consequential loss*, caused by the breach, less (c) any cost or other loss that he has
> avoided by not having to perform.

12

13

14

*Id.* (emphasis added).

15

Consequential damages are those that occur as a result of special circumstances, beyond

16

the ordinary course of events, which the party in breach will be aware of at the time of contract

17

formation only if notified of such circumstances. Restatement (Second) of Contracts § 251

18

(Am. Law. Inst. 1981); *see Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1255 (D. Nev.

19

2015) ("Consequential losses are those damages that 'arise[e] naturally or were reasonably

20

contemplated by both parties at the time they made the contract.") (quoting *Hornwood v.*

21

*Smith's Food King No. 1*, 772 P.2d 1284, 1286 (Nev. 1989).  Because JE Dunn's damages are

22

barred by the Subcontract if they are deemed consequential, the Court first turns to the plain

23

24

_____

25

[1] To be clear, when viewing the record in the light most favorable to JE Dunn, it has met its burden of showing a
dispute of material fact warranting a bench trial.  The Court advises JE Dunn, however, that to prevail at trial,
additional information beyond that which was submitted at summary judgment is needed.

language of the Subcontract's reciprocal consequential damages waiver.

Per section 12.14 of the Subcontract, JE Dunn and SMM waived "claims against each other for their consequential damages arising out of or relating to this Contract, including without limitation, any consequential damages due to either party's termination." (Subcontract at 18, Ex. 3 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ).  This provision is ambiguous, as it does not define what the parties contemplated would be "consequential damages."  The term "consequential damages" is subject to multiple interpretations, and "no two courts or treaties define consequential damages the same way." *See, e.g.*, Lynn R. Axelroth, *Mutual Waiver of Consequential Damages: The Owner's Perspective*, 18 CONSTR. L., 11 (1998) (listing six different interpretations of the term).  Thus, cursory language waiving "consequential damages" provides no insight into how the parties intended to characterize and classify this category of damages.  Because the Subcontract is ambiguous as to what constitutes consequential damages, the Court looks to the intent of the parties, a factual inquiry. *See Everbank v. Wheeler*, No. 2:09-cv-1080, 2011 WL 1299936, at *3 (D. Nev. Mar. 30, 2011) ("Determining the parties' true intent or the circumstances that may elucidate ambiguous language may require fact finding by the trier of fact.").

SMM repeats its argument that JE Dunn's damages arising from the second TPF should be categorized as consequential damages because the parties never intended a second TPF to be used when they entered the Subcontract. (*See generally* Resp., ECF No. 137).  And its argument is again well taken.  The Subcontract, in defining SMM's Scope of Work, referred to SMM's construction and renovation of a single TPF for both phases. (Subcontract at 22, Ex. 3 to Eli Kaldahl Decl. to Ex. A to JE Dunn Partial MSJ).  And Kaldahl, JE Dunn's corporate representative, later acknowledged that at the time SMM and JE Dunn entered the Subcontract, the parties did not consider that a second TPF would be used to complete the project. (Eli Kaldahl Dep. 150:15–153:21, Ex. 3 to SMM Partial MSJ); (JE Dunn Answer & Counterclaims

1     ¶¶ 8–10).  The Scope of Work delineated in the Subcontract and the testimony of Kaldahl show

2 that it was the intent of the parties to use one TPF for both phases of performance.  This lends

3 itself to SMM's position that JE Dunn's use of a second TPF constitutes consequential damages

4 because JE Dunn only contracted to receive one TPF under the terms of the Subcontract, and

5 the parties did not consider utilizing a second TPF to complete performance at the time of

6 contracting.

7     The issue, however, is whether this intent extended to JE Dunn's potential remedies in

8 the event of delay, termination, or both.  On this point, there is no evidence conclusively

9 showing the parties' intent. *See Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*, 559 F. Supp.

10 3d 368, 372 (D. Del. 2021) (denying summary judgment where there were genuine issues of

11 fact as to whether limited categories of damages were consequential damages"); *S-Evergreen*

12 *Holding Corp. v. Aon Risk Ins. Servs. West Inc.*, No. 19-cv-1589, 2021 WL 9239871, at *4

13 (W.D. Wash. Oct. 26, 2021) (same).  Without evidence of a clear intent, the Court again turns

14 to the Subcontract's plain language to determine if JE Dunn's use of the second TPF could be

15 classified as JE Dunn's expectation interest, or direct damages, under § 347(a).

16     Sections 5.7 and 14.1 of the Subcontractor delineate two damages-for-delay provisions.

17 These damage-for-delay provisions provide that damages will be assessed against SMM for

18 delay in performance, and SMM would be liable to JE Dunn for additional expenses incurred

19 by JE Dunn in completing SMM's work. (Subcontract at 8, 19, Ex. 3 to Eli Kaldahl Decl. to

20 Ex. A to JE Dunn Partial MSJ).

21     According to JE Dunn, its use of a second TPF constitutes direct damage because it

22 represents the cost of replacing SMM's performance under these provisions. (*See generally*

23 Mot. Reconsider).  JE Dunn's contention is that the extent of SMM's delay led it to take

24 possession of the project and concurrently build a second TPF to comply with the Prime

25 Contract and Subcontract's terms that time was of the essence. (*Id.*).  The Subcontract's

damages-for-delay provisions lend themselves to JE Dunn's position that its use of the second TPF was incurred directly from SMM's failure to perform its work in a timely manner. JE Dunn now seeks recovery of what it avers was the reasonable cost to complete SMM's work. *See* Restatement (Second) of Contracts § 347(a) cmt. (Am. Law. Inst. 1981) (delineating that expectation damages could arise "where the injured party has simply had to pay an additional amount to arrange a substitute transaction and can be adequately compensated based on that amount").

Construing the facts in favor of JE Dunn, it remained a possibility either when the parties entered into the Subcontract, or as a natural flow from the breach, that extreme delay or abandonment would result in JE Dunn having to add a second TPF and work on both phases of the project concurrently in order to complete SMM's contracted work in a timely manner. *See Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So.2d 1278, 1281 (Fla. Dist. Ct. App. 2002) ("It is not necessary to prove that the parties contemplated the precise injuries that occurred so long as the actual consequences could have reasonably been expected to flow from the breach."). When viewed in this light, JE Dunn's use of a second TPF directly flowed from SMM's alleged delay. "In this case, as in many others, the precise demarcation between direct and consequential damages is a question of fact" that is not amenable to resolution at summary judgment. *Unilever U.S., Inc. v. Johnson Controls, Inc.*, No. 16-cv-01849, 2017 WL 3311038, at *5 (N.D. Ill. Aug. 2, 2017) (internal quotation marks omitted). Because issues of fact exist regarding the intended meaning and application of the Subcontract's consequential damages waiver provision and damages-for-delays provisions, the Court concludes that SMM is not entitled to summary judgment on this issue. *Hilton Hotels Corp.*, 642 P.2d at 1087. Accordingly, it GRANTS JE Dunn's Motion for Reconsideration on this issue.

///

///

**B. Foreseeability**

Next, the Court finds that issues of fact remain as to whether JE Dunn's use of the second TPF was foreseeable. Foreseeability requires that damages from a breach of contract be fairly and reasonably considered as arising from the breach itself, "or were reasonably contemplated by both parties at the time they made the contract." *Hornwood v. Smith's Food King No. 1*, 772 P.2d 1284, 1286 (Nev. 1989) (quoting *Conner v. S. Nev. Paving, Inc.*, 741 P.2d 800, 801 (Nev. 1987). "Ordinarily, this presents a factual issue to be determined by the trier of fact." *Daniel, Mann, Johnso & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982). For the reasons stated above, when the evidence is viewed in the light most favorable to JE Dunn, it is unclear whether its use of the second TPF was a natural consequence that could have reasonably been expected to flow from SMM's alleged breach. And here, "that the method of mitigation which, in hindsight, appears most reasonable and appropriate was not used should not preclude recovery." *Sacramento Mun. Utility Dist. v. United States*, 293 Fed. App'x 766, 771–72 (Fed. Cir. 2008). Accordingly, the Court declines to grant SMM summary judgment on this issue.

///

///

///

///

///

///

///

///

///

///

1

### I.    CONCLUSION

2      **IT IS HEREBY ORDERED** that JE Dunn's Motion for Reconsideration, (ECF No.

3   132), is **GRANTED**.

4      **IT IS FURTHER ORDERED** that SMM's Motion to Extend Time, (ECF No. 133), is

5   **DENIED as moot**.

6      **IT IS FURTHER ORDERED** that the parties will have thirty days from the date of this

7   Order to file a jointly proposed pretrial order pursuant to LR 16-3(b) using the form provided in

8   LR 16-4.

9      **DATED** this __26__ day of July, 2024.

10

11   _____

12   Gloria M. Navarro, District Judge
     UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25